

IN THE UNITED STATES DISTRICT COURTS
FOR THE ~~Northern~~ Western DISTRICT OF ~~Ohio~~ New York
~~EASTERN DIVISION~~

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO: 1:19-cr-00095-BKS |
| Plaintiff, | ) | JUDGE SANNES |
| | ) | |
| v. | ) | MOTION TO WITHDRAW THE |
| JARED MARC BROWN, | ) | GUILTY PLEA FROM MAY 17. |
| Defendant | | **Hearing Requested** |

Now comes, the Jared Marc Brown, by and through himself "pro se," moving this Court to allow him to withdraw his guilty plea in this case. For the reasons stated herein, this Court should grant this motion on several ground presented below.

The Second Circuit has made quite clear, that if a Defendant has a change of heart that into his decision to plea guilty, it is not enough to excel. **United States v. Rosen**, 409 F.3d 535, 546 (2d Cir. 2005). This Court should be familiar with **United States v. Schmidt**, where the Court of Appeals expresses that, "[a] defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence[,] if . . . the defendant can show a fair and just reason for requesting the withdrawal," under Federal Rule of Criminal Procedure 11(d)(2)(B). 373 F.3d 100, 101 (2d. Cir. 2004).

In **Schmidt**, the Court determined through several non-exclusive factors that a lower Court is instructed to follow in order to determine whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court considers, inter alia: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed

1.

between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just; and (3) whether the government would be prejudiced by a withdrawal of the plea. **_Schmidt_**, 373 F.3d at 103. "Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea." **_Id_**.

Here, it is fair and just reasons to accept this request on the notion that Brown was not in a stable mental capacity.[1] Inside of the Courtroom he was informed by USMS that he could not receive any medical attention until he went before the Court. Nonetheless, Emergency Medical Services was in the Courtroom, but, they were also informed that Brown could not receive reasonable treatment until after the proceedings before the Court. Even this Court was aware of the situation about his mental issue, and made note about on the record. The judicial officers own choices may give rise for withdrawal. *See,* **_United States v. Rose_**, 891 F.3d 82, 85 (2d Cir. 2018) (quoting **_Schmidt_**, 373 F.3d at 103)(the judicial process is a vital ingredient to take into consideration as to a withdrawal). As found from note 1, that Mr. Green's failure to cross-examine the SSA musters a inquiry of ineffective assistance of counsel.

Again Brown's case was strong, but the failure to investigate and inquire calls for question and answers. **_Strickland v. Washington_**, 466 U.S. 668, 688, 691-92 (1984)(counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to

---

[1] The trial was going in Brown's favor, up until the counsel for the defense, choked and decided to not cross-examine the government's star witness the Special Agent from the Secret Service (hereinafter "SSA"). Accordingly, right before closing arguments the Defendant while in the holding cell, began to self-mutilate where an ambulance was summoned by the Marshal Services (hereinafter "USMS") whereas it was determined that Brown needed medical attention, due to Brown bleeding in his arm. Brown was informed that he could not receive medical attention until after his court hearing. Because of his counsel ineffectiveness from the outset, gave rise to Brown mental spiral. This is important. This prejudicial encounter by counsel during the trial, and the strategic method to not cross examine a star witness, is enough to allow for a withdrawal.

counsel's judgments.").

Furthermore, the **_Schmidt_** factors support withdrawal of this motion. First, Defendant maintains his innocence; however, because counsel trial strategies and motives, caused defendant to jump ship during before the coming of closing arguments.[2] Secondly, this motion comes days after Mr. Green announced that he would be retiring from private practice, and new counsel would be replaced last minute for only sentencing purposes. This is not fair. Here, its safe to assume that counsel knew that he was going to retire, because this is not typically a last minute move. Mr. Green noted that it would review the presentencing report (hereinafter "PSIR") and a sentencing memorandum, for a hearing he is not attending. This is still not fair; yet ineffective. Sometimes, ineffectiveness of counsel may give rise to a motion for withdrawal of the plea ; **_Rompilla v. Beard_**, 545 US 374 (2005); **_United States v. Hernandez_**, 242 F.3d 110, 112 (2d. Cir. 2001)(in a habeas proceeding the Court must consider a petitioner's claim of ineffective assistance of counsel, whether he would not have pled guilty to the indictment). This fits the bill.

As the Second Circuit has found, the obligation to ensure that a defendant who elects to plead guilty does so knowingly and voluntarily is at the heart of Fed. R. Crim. P. 11. A defendant's mental status is central; a defendant's impaired mental or emotional capacity can interfere with his ability to understand what he is being told and to exercise rational choice. **_United States v. Pattee_**, 820 F.3d 496, 505 (2d. Cir 2016). The shoe fits. This Court is directed further by the Second Circuit to look at the matters involving mental illness in part to ensure that the Defendant understands the nature and consequence before him. **_United States v. Rossillo_**, 853 F.2d 1062 (2d. Cir. 1988); **_United States v. Yang Chia Tien_**, 720 F.3d 464, 469 (2d Cir. 2013)(a defendant must establish "a reasonable probability that, but for the error, he would not have entered the plea."). *See also*, **_United States v._**

---

2    Brown was fortunately taken to the hospital where he did receive medical treatment (stitches) stemming from his mental episode. Afterwards, Brown was placed in a suicide prevention area of the Munroe County Jail, stemming from the episode at the Courthouse.

*Adams*, 768 F.3d 219, 223 (2d. Cir. 2014). Notably, mental illnesses, was played a crucial role on May 17, 2022. This Court knew that Brown suffered from difficulty from the outset of the hearing and has mental health treatment. . The Court should reverse its acceptance here accordingly, because it do not exhaust its authority to look at the matters concerning this defendant, thoroughly, from the view of the Defendant's presence in the courtroom. **_United States v. Livorsi_**, 180 F.3d 76 (2d Cir. 1999)(reversing the conviction after review the presiding failed to observe and inquiry defendant's mental illnesses during the plea colloquy). This Court should have rejected the plea, until Brown was in the right state of mind or further investigation of his conduct. Even by the sweeping argument presented above, the Defendant further, request that this Court allows for withdrawal of his plea, to be able to enter a written plea with the Government under Rule 11(c)(1).[3] Currently, Defendant has no plea agreement. As the PSIR indicates that the United States has changed its position departing from the guidelines, Brown would like a sentence with a plea agreement after this discovery that would allow a binding upon this Court.

---

3    See, Federal Rules: Fed. R. Crim. P. 11(c)(1)(C) (in return for plea, prosecutor will agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)). See also Notes of Advisory Committee on 1999 Amendments, Note to Subdivision (e) (the government and defense have actually agreed on what amounts to an appropriate sentence or have agreed to one of the specified components. The amendment also makes clear that this agreement is binding on the court once the court accepts it. [T]he court retains absolute discretion whether to accept a plea agreement.). *See also,* Judicial Oversight of Negotiated Sentences in a World of Bargained Punishment,58 Stan. L. Rev. 293, 299 (October 2005) (A plea agreement under subsection (B) involves mere recommendations as to sentence, so that the defendant enters a guilty plea risking that the judge may impose a sentence higher than the sentence recommended in the agreement.).

Jared Brown 24438-055
N.E.O.C.C
2240 hubbard rd
Youngstown, OH 44505

CLEVELAND OH 440
16 AUG 2022 PM 8

Core Civic/NEOCC has not censored and will not be responsible for the contents, U.S. COURT inspected
AUG 19 2022
RECEIVED

Hon Brenda K. Sannes
P.o box 7367
100 S. Clinton St.
Syracuse, NY 13261-7367

13261-610099